UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARTY MILLER,

Plaintiff,

Civil Action No. 2:13-cv-15130
Honorable Sean F. Cox
Magistrate Judge David R. Grand

v.

L. DERUSHA, *et al.*,

Defendants.
_____________________________________/

**REPORT AND RECOMMENDATION TO GRANT DEFENDANTS YONKERS, DERUSHA, AND HEYNES' MOTIONS TO DISMISS (DOCS. #21, 23)**

Before the Court for a Report and Recommendation are Defendant Jeffery Yonkers' and Defendants Leon Derusha and Daniel Heynes' Motions to Dismiss, filed on March 19, 2014 (Doc. #21), and on March 3, 2014 (Doc. #23), respectively. Plaintiff Marty Miller filed a response to the motions on April 18, 2014 (Doc. #25). Yonkers filed a reply on May 15, 2014. (Doc. #26). Pursuant to Eastern District of Michigan LR 7.1(f)(2) the motions to dismiss will be determined without oral argument, and notice was given of this determination on March 25, 2014 (Doc. #24).

## I. Background

Plaintiff Miller is an inmate at Macomb Correctional Facility. (Doc. #1 at 1). His claims in this action arise out of 42 U.S.C. § 1983 and § 1985, and the First, Fourth, Eighth, and Fourteenth Amendments. *Id.* at 3. Miller states that his girlfriend and mother of his son was a woman named Donna (Miller is uncertain of her last name, and does not provide a name for his son). At some point in the late 1980s or early 1990s, while Miller was incarcerated at Jackson State Prison, he was approached by Donna's incarcerated brother, who Miller believes is named

Lee Malkowski. *Id.* at 6. Malkowski told Miller that he was there to help get him out, but Miller brushed off this offer.

According to Miller, at some point during this same time period an officer at the visiting desk informed Miller that he had a visitor. *Id.* at 7. Though he was not informed who it was, he proceeded to the visiting room. Miller saw a girl and waved at her, but he was not sure who she was at the time. He claims that as he approached, he saw two unidentified officers pass knives to three inmates. Miller was then told by the officers that he was to return to the visiting desk, as his visitors had not yet arrived.

Miller returned to the visiting desk at his unit, but was informed that his visitors had arrived and that he needed to return to the visiting room. *Id.* at 8. Miller claims that upon returning to the visiting room, he saw a fearful woman and a man drawing a knife, as well as a child. He claims the woman was raped by the inmates and officers. Officers eventually arrived and escorted Miller away from the scene, but did not help the woman. *Id.*at 9. Approximately a week later, when he heard an officer talking with Malkowski, Miller realized that the woman was Donna and the child was his son. *Id.* at 11. Miller claims that approximately one to two weeks later, he witnessed Malkowski being stabbed by correctional officers. *Id.* at 12. The officers cleared the area of inmates and left Malkowski there to die. *Id.*

Miller claims that he did not know the names of the alleged assailants involved in the incident. He was eventually transferred to the Chippewa Correctional Facility, and on June 4, 2013, he spoke with an Inspector Hubbard. *Id.* at 18. During the conversation, he was introduced to Lt. Leon Derusha, who Miller claims he immediately recognized as the officer who gave the inmates the knives in the past incident. Miller believes that Donna now works as a corrections officer, but was tricked into taking the position by Derusha. *Id.* at 20. Miller does

not state his basis for this knowledge.

On May 21, 2013, Miller filed a grievance on the matter pursuant to the Michigan Department of Corrections' three-step grievance process. *Id.* at 34. After his Step I grievance was rejected, he proceeded to a Step II grievance appeal on May 29, 2013, which was also rejected. *Id.* at 40-41. Miller then filed a Step III grievance appeal which was rejected on September 30, 2013. *Id.* at 43.

On December 18, 2013, Miller filed a complaint in this court against Derusha, Yonkers, and Heynes, along with Sandra Girard and five John Doe defendants, alleging a civil conspiracy to commit assault, kidnap, murder, and rape; First Amendment violations of Miller's right to communicate with the victims; Eighth Amendment violations by denying medical treatment to Miller, his girlfriend, and son; and the wrongful death of Lee Malkowski. *Id.* at 5-6. Although not specifically alleged, Miller's complaint also makes allegations consistent with a claim for intentional infliction of emotional distress ("IIED"). *Id.* at 21-24. He further alleges that defendant Yonkers, a detective sergeant with the Michigan State Police Department, was involved in a cover-up of these incidents although he does not specify how. *Id.* at 27. He alleges the same for defendant Girard, who was an attorney with prisoner legal services. *Id.* He makes no specific allegations against defendant Heynes (who is the MDOC's Director), though he does make vague references to various MDOC "policies, "practices" and "customs" which purportedly violate his rights. *Id.* at 22-26; 28.

Miller was granted leave to proceed *in forma pauperis*, and the Marshal was directed to attempt to serve the defendants. All defendants were served with the exception of Girard, whose waiver of service was returned unexecuted for insufficient address. [18]. To date she has not been re-served.

On March 19, 2014, defendant Yonkers moved to dismiss Miller's complaint. [21]. On March 24, 2014, defendants Derusha and Heynes did the same. [23]. In their respective motions, Defendants argue that the statute of limitations has passed for the alleged wrongs, that the Eleventh Amendment grants sovereign immunity to the state and its agents from suit, and that the factual assertions put forward in Miller's complaint are insufficient to state claims against them.

## II. Legal Standard

A motion to dismiss pursuant to Fed. R. of Civ. P. 12(b)(6) tests a complaint's legal sufficiency. Under Fed. R. Civ. P. 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (*citing Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556. Put another way, the complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555-56). *See also Iqbal*, 129 S.Ct. at 1950, ("where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not

show[n]—that the pleader is entitled to relief.") (internal quotations omitted).

In deciding whether a plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Id.*; *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007). That tenet, however, "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," to prevent a complaint from being dismissed on grounds that it fails to sufficiently comport with basic pleading requirements. *Iqbal*, 129 S.Ct. at 1949. *See also*, *Twombly*, 550 U.S. at 555; *Howard v. City of Girard, Ohio*, 346 Fed. Appx. 49, 51 (6th Cir. 2009). Furthermore, a court is not required to "create a claim which [a plaintiff] has not spelled out in his pleading." *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S.Ct. at 1949.

Pleadings filed by *pro se* litigants are entitled to a more liberal reading than would be afforded to formal pleadings drafted by lawyers. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007). Nonetheless, "[t]he leniency granted to pro se [litigants] ... is not boundless," *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004), and "such complaints still must plead sufficient facts to show a redressable legal wrong has been committed." *Baker v. Salvation Army*, 2011 WL 1233200, at *3 (E.D. Mich. Mar. 30, 2011).

## III. Analysis

Miller's complaint against the Defendants fails for a number of reasons. First, to the extent Miller alleges violations of the criminal statutes of murder, kidnapping and rape, he has not alleged a claim upon which relief can be granted because there is no private right of action

to proceed on an alleged violation of these statutes against any of the Defendants. *See Hatem El Ssayed v. Western Mich. Univ.*, 2013 U.S. Dist. LEXIS 90306, *10 (criminal statutes do not generally provide a private right of action and only can be inferred to do so when there is clear legislative intent) (*citing Lash v. City of Traverse* City, 479 Mich. 190, 192-93 (2007). Thus, any such claims should be dismissed.

Second, to the extent Miller purports to be raising violations of 42 U.S.C. § 1983 on behalf of Donna and his son, those claims should be dismissed. The Sixth Circuit recently summarized the requirements for third party standing as follows:

> In deciding when not to apply the rule, the Court has considered two factual elements: The first is the relationship of the litigant to the person whose right he seeks to assert. If the enjoyment of the right is inextricably bound up with the activity the litigant wishes to pursue, the court at least can be sure that its construction of the right is not unnecessary in the sense that the right's enjoyment will be unaffected by the outcome of the suit. Furthermore, the relationship between the litigant and the third party may be such that the former is fully, or very nearly, as effective a proponent of the right as the latter. Elsewhere, the Court has described this test as requiring that the party asserting the right has a 'close' relationship with the person who possesses the right, and that there is a hindrance to the possessor's ability to protect his own interests.

*Smith v. Jefferson County Bd. of Sch. Comm'rs*, 641 F.3d 197, 208 (6th Cir. 2011) (internal citations and quotations omitted). Miller has failed to satisfy the requirements of third party standing here, as he has failed to allege facts to support either prong, but most especially the element requiring a showing that Donna and/or his (now grown) son are hindered from protecting their own interests. Therefore, any claims Miller seeks to make on behalf of Donna and/or his adult son should be dismissed for lack of standing.

With regard to Miller's own claims of violations of the First, Eighth and Fourteenth Amendments, alleged through the vehicle of § 1983, as well as his IIED claim based on the acts alleged, his claims fail and should be dismissed. With regard to his § 1983 claims, because

Congress did not provide a specific statute of limitations for § 1983 actions, "federal courts must borrow the statute of limitations governing personal injury actions in the state in which the section 1983 action was brought *Wolfe v. Perry*, 412 F.3d 707, 713-14 (6th Cir. 2005). (Citing *Wilson v. Garcia*, 471 U.S. 261, 275–76, (1985)). In the state of Michigan, the applicable statute of limitations is three years after the time of death or injury. M.C.L. § 600.5805(10). This same statute of limitations applies to Miller's IIED claims. *See id.* Thus, unless there exists a reason to toll these applicable statutes, these claims of Miller's expired many years ago.

Miller's claim that he was not able to sue earlier because he did not know the officer in question's identity lacks merit. The statute of limitations begins to run when "the plaintiff knows or has reason to know of the injury which is the basis of the action." *Kuhnle Bros., Inc. v. County of Geauga*, 103 F.3d 516, 520 (6th Cir. 1997) (quoting *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984)). *See also Connelly v. Paul Ruddy's Equipment Repair & Service Co.*, 388 Mich. 146, 151 (1972) ("Once all of the elements of an action for personal injury, including the element of damage, are present, the claim accrues and the statute of limitations begins to run."). Clearly, Miller's claims related to the events described in his complaint from the late 1980's or early 1990's accrued at that time, as he alleges that he observed the events take place and immediately suffered adverse consequences himself. Thus, the applicable statute of limitations has long since run on those claims.

The statute is not tolled simply because Miller did not know the name of any particular Defendant involved in those events. As evidenced by his instant complaint (which alleges claims against several John Doe defendants), Miller clearly understands that litigants may sue unidentified defendants prior to learning their identities. [1]; *see also Brown v. Owens Corning Inv. Review Comm.*, 622 F.3d 564, 572 (6th Cir. 2010) ("Plaintiffs are permitted to bring suit

against unnamed 'John Doe' defendants until discovery or other information reveals the identity of the party."). Because the statute of limitations on these claims has long expired, and because Miller's allegations provide no avenue for tolling those statutes,[1] his §1983 and IIED claims against these named Defendants fail as a matter of law and should be dismissed.

Finally, despite the fact that neither Girard nor the unidentified defendants have been served with process in this case, the Court finds that the above analysis applies in equal force to them under the strictures of 28 U.S.C. § 1915. *See* 28 U.S.C. § 1915(e)(2)(B) (a Court "shall dismiss the case ***at any time*** if the court determines that . . . the action . . . fails to state a claim upon which relief can be granted) (emphasis added); *Neitzke v. Williams*, 490 U.S. 319, 324 (1989) (noting that while Congress enacted 28 U.S.C. §1915 to "ensure that indigent litigants have meaningful access to the federal courts," it also "recognized . . . that a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits."); *see also Wilson v. Napoleon*, No. 10-13396, 2012 U.S. Dist. LEXIS 146447 (E.D. Mich. Oct. 11, 2012) (dismissing plaintiff's complaint *sua sponte* even after finding that it survived a motion to dismiss based on exhaustion of remedies). Accordingly, Miller's claims against those Defendants, too, should be dismissed.

In sum, for the reasons discussed above, the Court recommends that the Defendants' motions to dismiss be granted, and that Miller's complaint be dismissed with prejudice.[2]

---

[1] The Court rejects Miller's argument that the alleged wrongful conduct is still ongoing because he "has never been released from prison." [1 at 2-3]. Whether Miller is entitled to be released from prison has to do with his criminal conviction and the expiration of his term of incarceration, not any of the Defendants' alleged conduct in this action. His continued incarceration does not toll any claim he may otherwise have had.

[2] Although the Court recommends dismissing Miller's complaint on the foregoing grounds, and

**Conclusion**

For the foregoing reasons, the Court **RECOMMENDS** that the motions to dismiss filed by Defendants Yonkers, Derusha, and Heynes **(Docs. # 21, 23)** be **GRANTED**, and Miller's complaint be **DISMISSED**.

Dated: July 14, 2014
Ann Arbor, Michigan

s/David R. Grand
DAVID R. GRAND
United States Magistrate Judge

**NOTICE TO THE PARTIES REGARDING OBJECTIONS**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991);

---

thus does not address in detail the remainder of the Defendants' arguments, it notes that to the extent Miller's claims remained valid under this analysis, they would likely be dismissed for a whole host of other reasons, including under the Eleventh Amendment (as to Miller's "official capacity" claims, *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)), or for simply failing to comply with the pleading requirements discussed above, *supra* at 4-5, as Miller's complaint makes insufficient factual allegations (and in some respects, no factual allegations whatsoever) against Heynes, Yonkers and Girard, and makes no claims that Derusha acted recklessly or was even aware of Miller's presence during the time in question, which would be required for Miller to properly allege that Derusha acted with intent to inflict distress upon him. *See Johnson v. Wayne County*, 213 Mich. App. 143, 161 (1995) (to withstand summary judgment on an IIED claim, the plaintiff must put forth evidence sufficient to create an issue of fact with regard to the following elements: "(1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress.").

*Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge. A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record via email addresses the Court has on file.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager

Dated: July 14, 2014